GERALD E. KENNEDY, Plaintiff and Judgment Creditor, v. FOUR BOYS LABOR SERVICES, INC., Defendant and Judgment Debtor (Gerald E. Kennedy, Indiv. and Derivatively on behalf of Four Boys Labor Service, Inc., Plaintiffs in the Supplementary Proceedings and Appellees, v. Miriam Kozin *et al.*, Defendants in the Supplementary Proceedings and Appellants).

Second District   No. 2—95—1160

Opinion filed April 26, 1996.

362

Edward Slovick and James S. Gordon, both of Gordon, Glickman & Flesch, of Chicago, for appellants.

Robert R. Benjamin and Beverly A. Berneman, both of Benjamin & Berneman, Ltd., and Thomas G. Krebs, of Thomas G. Krebs & Associates, both of Chicago, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Defendants, Miriam Kozin, Steven Kozin, Mark Kozin, Robert Kozin, Jeffrey Kozin, and SMRJ, Inc., appeal the order of the circuit court of Lake County which granted summary judgment in favor of plaintiff, Gerald E. Kennedy. We affirm in part and reverse in part.

Prior to August 30, 1990, plaintiff had been employed by Four Boys Labor Service, Inc. (Four Boys), as a sales manager. Plaintiff was subsequently dismissed and he filed a complaint against Four Boys in the circuit court of Cook County. The complaint alleged that Four Boys had breached an employment contract and that Four Boys had wrongfully discharged plaintiff. On July 20, 1993, the trial court entered a judgment in favor of plaintiff and against Four Boys in the amount of $68,348.98.

Shortly after plaintiff filed his original complaint, Erwin Kozin passed away. Miriam, as the sole director of Four Boys, executed an agreement which transferred the corporation's assets to Erwin's probate estate. Although the exact manner of the transfer is unclear, the corporation's assets were transferred from the probate estate to Miriam. On December 11, 1991, Miriam executed a contract of sale which sold all of Four Boys' assets to Steven Kozin, Mark Kozin, Robert Kozin, and Jeffrey Kozin (Kozin brothers). Miriam sold the assets in exchange for the sum of $10,000 plus a note payable in monthly installments of $2,500. The Kozin brothers then transferred Four Boys' assets to SMRJ, Inc. (SMRJ). The Kozin brothers are the sole shareholders of SMRJ. On December 1, 1992, Four Boys was involuntarily dissolved by the Secretary of State for failure to pay franchise taxes and failure to file an annual report. SMRJ continues to do business utilizing the trade name "Four Boys Labor Service."

On March 29, 1995, plaintiff filed a supplementary proceeding pursuant to section 2—1402(c)(6) of the Illinois Code of Civil Proce-

dure (735 ILCS Ann. 5/2—1402(c)(6) (Smith-Hurd Supp. 1996)) seeking the recovery of certain assets of Four Boys in order to satisfy plaintiff's judgment. The supplementary proceeding was directed against Miriam Kozin, Steven Kozin, Mark Kozin, Robert Kozin, Jeffrey Kozin, and SMRJ as a result of the events which occurred following the death of Erwin Kozin.

Plaintiff's supplementary complaint alleged seven counts. Count I was brought derivatively on behalf of Four Boys and alleged that, by selling the corporation's assets to the Kozin brothers, Miriam had rendered the corporation insolvent and unable to pay its debts. Count II was directed against Miriam and alleged that Miriam's failure to mail notice of Four Boys' dissolution to plaintiff rendered her personally liable to plaintiff for the amount of plaintiff's judgment. Count III sought the turnover of corporate assets held by Miriam. Count IV was directed against the Kozin brothers and alleged that the Kozin brothers purchased Four Boys' assets subject to all the liabilities of the corporation, which liabilities included plaintiff's judgment. Count V was directed against SMRJ and alleged that SMRJ was the successor of Four Boys and, thus, subject to the liabilities of the former corporation. Counts VI and VII were directed against Miriam and the Kozin brothers and alleged that the transaction entered into between Miriam and the Kozin brothers represented a fraudulent conveyance.

Both parties filed motions for summary judgment, and on August 1, 1995, the trial court granted plaintiff's motion as to counts II, III, IV, V, and VII. The trial court ordered Miriam to turn over the proceeds she had received from the sale of Four Boys to the Kozin brothers. The order further required SMRJ to pay plaintiff the monthly installments which it had previously been paying Miriam until such time as plaintiff's judgment was satisfied.

On August 7, 1995, plaintiff filed a motion for the issuance of a rule to show cause for Miriam's failure to turn over the proceeds she had received from the sale of Four Boys. On August 23, 1995, defendants filed a motion to vacate the judgment which was denied. On August 23, 1995, the trial court, pursuant to Supreme Court Rule 277(h) (134 Ill. 2d R. 277(h)), entered a money judgment against Miriam in the amount of $82,023.58. This timely appeal followed.

On appeal, defendants argue that the trial court erred in entering summary judgment against defendants because plaintiff failed to show that defendants possessed any asset of the judgment debtor (Four Boys). Summary judgment is proper where there are no disputed questions of fact and the moving party is entitled to judgment as a matter of law. See *Signal Capital Corp. v. Lake Shore*

*National Bank*, 273 Ill. App. 3d 761, 767 (1995). We review the trial court's grant of summary judgment *de novo*. *Signal Capital*, 273 Ill. App. 3d at 768. Because there are no disputed issues of fact, we need only determine whether the trial court properly determined, as a matter of law, that plaintiff was entitled to summary judgment as to counts II, III, IV, V, and VII.

■ Supplementary proceedings may only be initiated after a judgment has been entered and are designed to assist a judgment creditor to discover assets of the judgment debtor in order to satisfy that judgment. 735 ILCS Ann. 5/2—1402 (Smith-Hurd Supp. 1996); *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618, 622-23 (1994). Once a judgment creditor discovers assets of the judgment debtor in the hands of a third party, the trial court may order the third party to deliver up those assets to satisfy the judgment. *Pyshos*, 258 Ill. App. 3d at 623. Section 2—1402(c)(6) of the Code of Civil Procedure further provides that when assets of the judgment debtor are discovered, the court may "[a]uthorize the judgment creditor to maintain an action against any person or corporation that, it appears upon proof satisfactory to the court, is indebted to the judgment debtor, for the recovery of the debt." 735 ILCS Ann. 5/2—1402(c)(6) (Smith-Hurd Supp. 1996).

■ In analyzing defendants' argument, we will consider the trial court's grant of summary judgment as to each individual count. The trial court granted summary judgment in favor of plaintiff on count II. Count II alleged that Miriam violated sections 8.65(a)(2) and 12.75 of the Business Corporation Act of 1983 (Business Corporation Act) (805 ILCS 5/8.65(a)(2), 12.75 (West 1994)). These sections impose individual liability on the director of a corporation who causes the corporation to be dissolved without providing proper notice to known creditors of the corporation. See 805 ILCS 5/8.65(a)(2), 12.75 (West 1994). It is undisputed that Miriam failed to give notice to plaintiff that the corporation was being dissolved. Further, it would appear that plaintiff was a known creditor of the corporation because, while plaintiff's claim had not yet been reduced to judgment, plaintiff's complaint was filed prior to the dissolution of the corporation.

■ However, an action to impose liability pursuant to the Business Corporation Act is an attempt to hold a corporate director personally liable for damages sustained by a creditor and is not concerned with the actual assets of the judgment debtor. See 805 ILCS 5/8.65(a)(2), 12.75 (West 1994). Such an action does not require allegations that assets of the judgment debtor are in the hands of a third party or that the third party is indebted to the judgment debtor. Thus, because such an action imposes personal liability independent

of the debtor's assets, such an action constitutes a separate action not properly brought in a supplementary proceeding. See *Pyshos*, 258 Ill. App. 3d at 623-24. Thus, the trial court erred in granting summary judgment as to count II.

■ Count III sought the turnover of the proceeds which Miriam received from the sale of Four Boys' assets to the Kozin brothers. Defendants argue that the trial court erred in granting summary judgment as to count III because Miriam no longer was in possession of the assets of Four Boys; rather, she was in possession of the proceeds from the sale of the assets of Four Boys. In interpreting the provisions of section 2—1402, the provisions are to be liberally construed, and the statute gives courts broad powers to compel the application of discovered assets or income to satisfy a judgment. *Bentley v. Glenn Shipley Enterprises, Inc.*, 248 Ill. App. 3d 647, 651 (1993).

Defendants correctly note that the statute provides that a judgment creditor may only recover the assets of the judgment debtor. 735 ILCS Ann. 5/2—1402 (Smith-Hurd Supp. 1996). However, where a third party has transferred the assets of the corporate debtor for consideration, with full knowledge of the existence of an outstanding claim against the corporation, then the judgment creditor may properly treat the proceeds from the sale of the assets as property of the corporate debtor, which is recoverable pursuant to section 2—1402 of the Code of Civil Procedure (735 ILCS Ann. 5/2—1402 (Smith-Hurd Supp. 1996)). To hold otherwise would allow a third party to obtain assets of a judgment debtor and then sell those assets to another third party, thereby precluding recovery. Such a conclusion would be especially forthcoming where the subsequent third party is a good-faith purchaser of the judgment debtor's assets. Thus, the trial court properly granted summary judgment as to count III.

■ Count IV sought recovery against the Kozin brothers pursuant to the Kozin brothers' express agreement to assume the liabilities of the corporation. Generally, the mere transfer of assets from one entity to another does not make the latter liable for the debts and liabilities of the former. See *Hoppa v. Schermerhorn & Co.*, 259 Ill. App. 3d 61, 64 (1994). However, liability will be imposed where there is an express or implied agreement of assumption. *Hoppa*, 259 Ill. App. 3d at 64.

In the case at bar, the Kozin brothers expressly assumed all liabilities of Four Boys pursuant to the contract of sale entered into by the Kozin brothers and Miriam. Thus, the trial court correctly granted summary judgment as to count IV.

■ Count V sought recovery against SMRJ, as successor of Four

Boys by express agreement. We have already found that the Kozin brothers expressly assumed the liabilities of Four Boys as a result of the contract of sale between Miriam and the Kozin brothers. Additionally, we noted that generally the transfer of assets from one entity to another does not necessarily result in the transfer of liability from one entity to another absent an express assumption of those liabilities. See *Hoppa*, 259 Ill. App. 3d at 64. There was no evidence presented which would indicate that SMRJ expressly assumed the liabilities of Four Boys.

However, another exception which exists to this general rule is where the buyer is a mere continuation of the seller. *Hoppa*, 259 Ill. App. 3d at 64. Where the purchasing entity is a mere continuity of the selling entity, then the liabilities of the seller will be transferred to the buyer. *Hoppa*, 259 Ill. App. 3d at 64.

An important consideration in making such a determination is whether there is continuity of shareholders or directors from the first entity to the second entity. See *Hoppa*, 259 Ill. App. 3d at 66. In the case at bar, the Kozin brothers obtained all the assets of Four Boys via a contract of sale which contained an express assumption of liability. Thereafter, the Kozin brothers transferred all the assets to SMRJ, a corporation of which the principal shareholders are the Kozin brothers. As such, SMRJ would appear to be a mere continuation of Four Boys.

This conclusion is further supported by the fact that SMRJ continued to operate the same business as had Four Boys and, in fact, SMRJ continued to utilize the name "Four Boys Service" as its trade name. Based on the facts in the case at bar, SMRJ was a successor to Four Boys and, thus, was liable for Four Boys' debts and obligations. The trial court correctly granted summary judgment as to count V.

■ Count VII alleged that the assets transferred by Miriam to the Kozin brothers were fraudulent conveyances within the meaning of the Uniform Fraudulent Transfer Act (Fraudulent Transfer Act) (740 ILCS 160/1 *et seq.* (West 1994)). Defendants argue that an action brought pursuant to the Fraudulent Transfer Act is a separate action which cannot be brought as a supplementary proceeding. Defendants rely on the same argument which we found barred plaintiff from pursuing an action pursuant to the Business Corporation Act: specifically, that an action pursuant to the Fraudulent Transfer Act is a separate proceeding not related to the turnover of the judgment debtor's assets.

However, an action brought pursuant to the Fraudulent Transfer Act directly concerns the assets of the judgment debtor and imposes

liability based on the value of the transferred assets. See 740 ILCS 160/8 (West 1994). Such an action does not concern personal liability; rather, it attempts to avoid the transfer and seeks the actual assets transferred. Thus, plaintiff's count VII was properly brought in a supplementary proceeding. See *Alan Drey Co. v. Generation, Inc.*, 22 Ill. App. 3d 611, 618-20 (1974).

Pursuant to the Fraudulent Transfer Act, a transfer is fraudulent as to a creditor if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. 740 ILCS 160/5(a)(1) (West 1994). In making a determination as to actual intent, consideration may be given to whether:

"(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." 740 ILCS 160/5(b)(1) through (b)(11) (West 1994).

In the case at bar, the following factors support plaintiff's contention that the transfer was a fraudulent conveyance. First, the transfer was made to an insider. Miriam, as sole shareholder of Four Boys, transferred the assets of the corporation to her relatives, the Kozin brothers. Second, neither Miriam nor the Kozin brothers informed plaintiff during the pendency of the original proceeding that the assets of the corporation had in fact been transferred. Third, the transfer occurred during the pendency of the underlying lawsuit. Fourth, all of the debtor's assets were transferred by Miriam to the Kozin brothers. Fifth, Four Boys never informed plaintiff that the assets had in fact been transferred. Sixth, the transfer of Four Boys' assets rendered the corporation insolvent, and the corporation subsequently was unable to pay its liabilities.

Based on the above facts, which are uncontroverted, plaintiff has

presented sufficient evidence to support the finding that Miriam's transfer of Four Boys' assets constituted a fraudulent conveyance as defined by section 5 of the Fraudulent Transfer Act. 740 ILCS 160/5 (West 1994).

However, such a transfer is not voidable against a person who took in good faith and for a reasonably equivalent value. 740 ILCS 160/9 (West 1994). In the case at bar, Miriam transferred the assets of Four Boys to the Kozin brothers who, in turn, subsequently transferred those assets to SMRJ. Defendants have not denied that they knew plaintiff's underlying lawsuit was still pending and, in fact, Mark Kozin was an officer of the original corporation. Thus, defendants cannot allege that the Kozin brothers were good-faith purchasers as they were aware of plaintiff's underlying suit, proceeded with the transaction despite such knowledge, and failed to inform plaintiff of the transfer. See *Drey*, 22 Ill. App. 3d at 619. We find such facts to be sufficient to demonstrate that the Kozin brothers were not *bona fide* purchasers of Four Boys' assets. Thus, the trial court properly granted summary judgment as to count VII.

While the trial court erred in granting summary judgment as to count II, thereby precluding any recovery pursuant to the Business Corporation Act, plaintiff was entitled to summary judgment on counts III, IV, V, and VII. As noted above, counts III and VII were directed against Miriam while counts IV and VII were directed against the Kozin brothers. Count V was directed against SMRJ.

After granting summary judgment on the above counts, the trial court attempted to fashion an equitable remedy. On August 1, 1995, the trial court ordered Miriam to turn over the proceeds from the sale of the corporation's assets which she had received to date. It further ordered SMRJ to pay plaintiff the sum of $2,500 per month until the judgment was satisfied. As we noted above, pursuant to the contract of sale, Miriam was to receive $2,500 per month from SMRJ.

On August 3, 1995, plaintiff's counsel received a letter from defendants' counsel which indicated that defendants intended to appeal the trial court's order and, thus, Miriam would not turn over the proceeds from the sale of the corporation's assets. On August 5, 1995, plaintiff filed a motion for the issuance of a rule to show cause and for enforcement. The motion requested that the trial court find defendants in contempt and enter whatever orders it deemed necessary to enforce the August 1, 1995, order. On August 23, 1995, the trial court, pursuant to Supreme Court Rule 277(h) (134 Ill. 2d R. 277(h)), entered a judgment against Miriam for the sum of $82,023.58, the sum representing the underlying judgment, post-judgment interest, and court costs.

Defendants argue that Supreme Court Rule 277(h) does not provide the court with the ability to enter a money judgment against a defendant and further argues that the court made no finding that Miriam had failed to obey a citation, subpoena, order, or other direction of the court. Defendants also argue that, as a prerequisite to the entry of a sanction pursuant to Rule 277(h), the trial court was required to find Miriam in contempt.

■ Supreme Court Rule 277(h) provides that any person who fails to obey an order to deliver up or convey any personal property or its proceeds or value may be committed until the order is obeyed. 134 Ill. 2d R. 277(h). The rule also provides that the court may enforce its order against the real or personal property of that person. 134 Ill. 2d R. 277(h).

Rule 277(h) does not require a finding of contempt; rather, it merely states that the court *may* punish a person who fails to obey an order by finding that person in contempt. 134 Ill. 2d R. 277(h). As such, a finding of contempt is not a prerequisite to a sanction pursuant to Rule 277(h). Miriam had not yet obeyed the court's order of August 1, 1995, at the time the money judgment was entered against her on August 23, 1995. Pursuant to Rule 277(h), the trial court had ·discretion as to the nature of the sanction to impose. After reviewing the record in its entirety, it was not an abuse of discretion for the trial court to enter the money judgment against Miriam for the entire amount of plaintiff's judgment.

As an aside, we note that the agreement entered into between Miriam and the Kozin brothers in conjunction with the sale of the corporate assets required the Kozin brothers to indemnify Miriam against all debts and liabilities of the corporation. Therefore, it would appear that Miriam would be able to seek indemnification from the Kozin brothers for the money judgment entered against her.

Thus, the portion of the circuit court's grant of summary judgment as to count II is reversed; the portion of the circuit court's grant of summary judgment as to counts III, IV, V, and VII is affirmed. The order of the circuit court which entered a money judgment against Miriam in the amount of $82,023.58 is affirmed.

Affirmed in part and reversed in part.

BOWMAN and THOMAS, JJ., concur.