Charles L. THOMASON, Plaintiff,

v.

NORMAN E. LEHRER, P.C.,
and Norman E. Lehrer,
Defendants.

No. CIV.A. 98–2336.

United States District Court,
D. New Jersey.

Aug. 21, 1998.

---

Charles L. Thomason, Red Bank, NJ, pro se.

Norman E. Lehrer, Norman E. Lehrer, P.C., Cherry Hill, NJ, for Defendants.

## OPINION

ORLOFSKY, District Judge.

In what has unfortunately become a far too frequent occurrence in this era of "scorched-earth" litigation tactics, an errant attorney has lost sight of his professional obligations to his client, his profession, and this Court. What began in this Court as a relatively straightforward patent infringement dispute between two rain gutter manufacturers has now mushroomed into a separate, purported civil rights action brought by the attorney representing the plaintiff against the attorney representing the defendants in the patent dispute. The defendants in the patent action, represented by Norman E. Lehrer, Esq., alleged counterclaims against, among others, counsel for the plaintiffs, Charles L. Thomason, Esq. As a result of the counterclaims, Thomason and his firm were compelled to withdraw as plaintiff's counsel in the patent action. Instead of challenging the propriety of the factual allegations made by the patent case defendants in their counterclaims, either on their merits or through the mechanism of a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, Thomason instead chose to file a separate civil rights action against Lehrer and Lehrer's professional corporation in state court. After removal of the state court action to this Court, Thomason amended his complaint to allege again that Lehrer "committed [an] abuse of process under color of statute and state laws" merely because Lehr-

er, on behalf of his clients, had alleged and served counterclaims upon Thomason.

On its own motion and pursuant to Rule 11(c)(1)(B) of the Federal Rules of Civil Procedure, the Court entered an Order to Show Cause, the details of which are discussed below. After careful consideration, I find Thomason's conduct in this case to be intolerable and unprofessional. His actions were motivated by meanspiritedness and petulance, and driven by his ego, rather than his client's interests. Based upon the undisputed facts of record before me, I conclude that the frivolous civil rights action filed by Thomason in state court and then prosecuted in this Court was initiated solely to harass and retaliate against Lehrer.

Because Thomason has interposed claims in the purported civil rights suit which were presented for an improper purpose and were not warranted by existing law or by a non-frivolous argument for a change in law, I will impose sanctions against Thomason under Rule 11(b)(1–2) of the Federal Rules of Civil Procedure. I will fine Thomason $2,000, $1,000 to be paid directly to Lehrer and $1,000 to be deposited into the Court's Registry pursuant to Local Civil Rule 67.1. The fine shall be paid to Lehrer and the Clerk of the Court within thirty days of the date of this Opinion. I will also require Thomason to attend and complete continuing legal education ("CLE") courses in federal practice and procedure and on attorney professionalism and professional conduct. Thomason shall attend and complete the two CLE courses within eighteen months of the date of this Opinion. Upon completion of the CLE courses, Thomason shall file an affidavit with the Court attesting to his attendance at and satisfactory completion of each course.

Turning to the merits of Thomason's claims, I will dismiss Count I of the Second Amended Complaint for failure to state a claim upon which relief can be granted, and will order Thomason to show cause as to why the remaining state law counts alleged in the Second Amended Complaint should not be dismissed pursuant to the litigation privilege recognized under New Jersey law.

I have reached the decision to impose Rule 11 sanctions in this case only after careful deliberation. I do so with great reluctance, mindful of the duty of an attorney to represent his or her client's interest zealously. The circumstances of this case, however, present the unhappy picture of a lawyer who has crossed the boundary of legitimate advocacy into personal recrimination against his adversary. Lawyers are not free, like loose cannons, to fire at will upon any target of opportunity which appears on the legal landscape. The practice of law is not and cannot be a "free fire zone." While I will impose these sanctions pursuant to the authority conferred upon me by Rule 11, I join with those who urge the legal profession to return to the standards of professionalism which have characterized the bar throughout the history of our nation. *See, e.g.,* ABA Journal, *What it Takes to be a Professional* 48–73 (Aug.1998); American Bar Association, *Promoting Professionalism* (1997).

## I. Facts and Procedural History

The facts giving rise to this lawsuit are not generally in dispute. A full understanding of the conduct involved requires a description of the underlying patent infringement case, *Waterloov Gutter Protection Systems Co., Inc. v. Absolute Gutter Protection, L.L.C., et al.,* Civil Action No. 97–2554(SMO). On May 16, 1997, Waterloov Gutter Protection Systems Co., Inc. ("Waterloov"), then represented by Plaintiff, Charles L. Thomason, Esq. ("Thomason"), filed a Complaint in this Court alleging patent infringement by Absolute Gutter Protection, L.L.C. ("Absolute") and Charles Knight ("Knight"). *See* Complaint (dated May 15, 1997). Absolute and Knight were represented by Defendants, Norman E. Lehrer, Esq., and his firm, Norman E. Lehrer, P.C. (collectively, "Lehrer").

Shortly thereafter, the Court denied Waterloov's application for a preliminary injunction, and its motion for reargument of the denial of the application. *See* Opinion & Order (dated June 11, 1997); Opinion & Order (dated July 18, 1997). The denial of the preliminary injunction was affirmed on appeal by the United States Court of Appeals for the Federal Circuit on April 3, 1998. *See Waterloov Gutter Protection Sys., Co. Inc. v. Absolute Gutter Protection, L.L.C.,* 152 F.3d

947, No. 97–1497, 1998 WL 166589 (Fed Cir. 1998) Judgment (dated Apr. 3, 1998).

On July 16, 1997, Waterloov, still represented by Thomason, filed an Amended Complaint. *See* Amended Complaint (dated July 15, 1997) (hereinafter Amended Complaint or Amended Compl.). The Amended Complaint added several new defendants to the action, William Gumpper, Gumpper's Gutter Service, Ray Vandergrift, and Nelson Sensenig, doing business as Sensenig Spouting and White Oak Manufacturing, L.L.C. *Id.* at ¶¶ 2–6. These new Defendants are also currently represented by Lehrer.

In response to Waterloov's Amended Complaint, Absolute and Knight filed an Answer, Affirmative Defenses, and Counterclaims. In that pleading, Absolute and Knight asserted claims against Waterloov, Richard L. Kuhns ("Kuhns"), Thomason, Raymond R. Moser, Jr. ("Moser"), Emon J. Wall ("Wall"), and the law firm of Thomason & Moser. *See* Answer, Affirmative Defenses, and Counterclaims (dated July 29, 1997) (hereinafter Answer & Counterclaims). Kuhns is Waterloov's President. Moser is Thomason's law partner in the law firm of Thomason & Moser, and Wall is an associate at the firm.

On November 3, 1997, the Court held that, despite the pending appeal of the denial of the preliminary injunction, it had jurisdiction to consider Waterloov's motion to sever and dismiss certain of the claims alleged by Absolute and Knight in their Answer. *See* Opinion & Order (dated Nov. 3, 1997). On March 31, 1998, I dismissed without prejudice three of the claims asserted by Absolute and Knight in their Answer. Among the claims by Absolute and Knight which remained was one against Thomason, Moser, Wall, and/or Thomason & Moser. *See id.* at 8–9. Several days after the dismissal, Absolute and Knight amended their Answer and purportedly reasserted the counterclaims which had been dismissed. Some of the claims which were realleged contained allegations against Thomason. *See* First Amended Answer, Affirmative Defenses and Counterclaims ¶¶ 96, 98, 104 (dated Apr. 3, 1998).

On April 22, 1998, Waterloov, still represented by Thomason, answered the counter-

claims asserted against it in Absolute and Knight's First Amended Answer. Waterloov did not, however, answer Absolute and Knight's counterclaims which the Court had dismissed, but which were purportedly realleged in the First Amended Answer. *See* Waterloov's Answer to Counterclaims at p. 4 (dated Apr. 22, 1988). Similarly, in answering Absolute and Knight's counterclaims, Thomason, Moser, Wall, and Thomason & Moser, then represented by new counsel, averred that the purportedly realleged claims had not been properly interposed. *See* Thomason, Moser, Wall, and Thomason & Moser's Answer to Counterclaims ¶ 5 (dated Apr. 24, 1998). Kuhns did not file an answer to Absolute and Knight's counterclaims and a default was entered against him on April 28, 1998. That default was subsequently set aside on July 14, 1998. *See* Memorandum Opinion (dated July 14, 1998). On May 20, 1998, the Honorable Robert B. Kugler, United States Magistrate Judge, granted Thomason's motion to withdraw as counsel for Waterloov. *See* Letter Opinion (dated May 20, 1998).

On or about March 4, 1998, in the midst of the *Waterloov* litigation and before he was forced to withdraw as Waterloov's counsel, Thomason filed this civil rights action in the Superior Court of New Jersey, County of Monmouth, Law Division, naming as Defendants, Lehrer and Lehrer's professional corporation. *See Charles L. Thomason v. Norman E. Lehrer, P.C., et al.,* Docket No. Mon–L–1165–98, Complaint (dated Mar. 4, 1998).

The Complaint alleges three causes of action. Count I alleges abuse of process. In Count I, Thomason contends that Lehrer "did maliciously commit an abuse of process upon [Thomason] by filing a[c]ounterclaim that named [Thomason] as a party to the suit and serving a Summons upon [Thomason] in Monmouth County." *Id.* at ¶ 4. Thomason further alleges that "Lehrer committed the aforesaid abuse of process under color of statute and state laws," *id.* at ¶ 5, and that "Lehrer ... subjected [Thomason] ... to the deprivation of rights, privileges or immunities secured by the Constitution and laws," *id.* at ¶ 6. Thomason also alleges that "Lehrer made allegations that were not based on

facts, and were not based on a reasonable inquiry as to the facts," that "Lehrer made allegations which served to needlessly increase the cost of litigation," and that "Lehrer committed a willful act in the use of process which was intended by Lehrer to prevent the regular conduct of the proceeding and to accomplish an improper purpose." *See id.* at ¶¶ 7–10. Additionally, Thomason alleges that "Lehrer used means that had no substantial purpose other than to embarrass, delay or burden [Thomason], which is violative of [New Jersey Rule of Professional Conduct] 4.4 that governs conduct by attorneys." *Id.* at ¶ 11. Thomason demands judgment under 42 U.S.C. § 1983. *See id.* at p. 3.

Count II of Thomason's Complaint alleges negligent misrepresentation. *See id.* at ¶¶ 19–26. Count III alleges tortious interference. *See id.* at ¶¶ 29–33. In particular, Thomason contends that "at the time [Lehrer] committed abuse of process and negligently made misrepresentations, [Thomason] had a reasonable expectation of prospective work and fee income from acting as attorney in the *Waterloov* suit." *Id.* at ¶ 29. Thomason further alleges that "Lehrer was aware of [Thomason's] expectation, and [Lehrer] knew that prospective work would be interfered with or lost by [Lehrer's] abuse of process, and by [Lehrer's] negligent misrepresentation." *Id.* at ¶ 30.

On April 21, 1998, Thomason amended the Complaint filed in the Superior Court of New Jersey. *See Charles L. Thomason v. Norman E. Lehrer, P.C., et al.,* Mon–L–1165–98, Amended Complaint (dated Apr. 21, 1998). Essentially realleging those claims which had been presented in the original Complaint, Thomason added allegations that:

> Counts VII, VIII and IX of the Counterclaim [sic] signed by [Lehrer] made allegations against [Thomason], and by Order of March 31, 1998, the United States District Court dismissed those Counts.

> After receiving the Order of the Court dismissing Counts VII, VIII and IX that made allegations against [Thomason], [Lehrer] signed and served a further suit paper against [Thomason], called First Amended ·... Counterclaims, in which

[Lehrer] re-pleaded the dismissed allegations against [Thomason].

> On or about April 1, 1998, [Lehrer] did maliciously commit an abuse of process upon [Thomason] by signing and filing an Amended Counterclaim that reiterated allegations against [Thomason], which [Lehrer] served upon [Thomason] in Monmouth County.

*See id.* at ¶¶ 13–15. Thomason also alleged in the Amended Complaint an additional count against Lehrer for negligent misrepresentation. *See id.* at ¶¶ 32–43.

On May 18, 1998, allegedly within thirty days after receipt by Lehrer of a copy of the initial pleading setting forth a removable claim, Lehrer filed a Notice of Removal in this Court. The basis of federal subject matter jurisdiction alleged in support of removal was 28 U.S.C. § 1331, given that the Amended Complaint alleged a cause of action under 42 U.S.C. § 1983. *See* Notice of Removal (dated May 18, 1998). Thomason did not oppose removal.

On May 26, 1998, after recounting the procedural history of the action and relevant legal principles with respect to section 1983 actions, *see* Order to Show Cause ¶¶ 1–5 (May 26, 1998), I ordered Thomason to show cause:

> why Count I of the Amended Complaint should not be dismissed for failure to state a claim upon which [relief] can be granted and why Counts II through IV should not be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

*Id.* at p. 6–7. Also, having discussed why Thomason might be subject to sanctions and what "sanctioning tools" the Court was contemplating, *see id.* at ¶¶ 6–11, I ordered Thomason to show cause:

> why sanctions should not be imposed against Charles L. Thomason, Esq. pursuant to: (1) Rule 11 of the Federal Rules of Civil Procedure; (2) 28 U.S.C. § 1927; and (3) the Court's inherent powers.

*Id.* at p. 7; *see generally In re Tutu Wells Contamination Litig.,* 120 F.3d 368, 379–80 (3d Cir.1997) (holding that "the party against whom sanctions are being considered is entitled to notice of the legal rule on which the

sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions").

Apparently in response to the Order to Show Cause, Thomason filed in this Court yet another Amended Complaint on May 28, 1998 (hereinafter Second Amended Complaint or Second Amended Compl.). In most respects the Second Amended Complaint filed in this Court was identical to the Amended Complaint which had been filed in the Superior Court. The only material difference appears to be that in Count I of the Second Amended Complaint, Thomason omitted any reference to 42 U.S.C. § 1983. Accordingly, by letter, I amended the Order to Show cause to require the parties to brief the additional question of why Count I of the Second Amended Complaint should not be dismissed for lack of subject matter jurisdiction. *See* Letter (dated May 28, 1998).

## II. Discussion

### A. Subject Matter Jurisdiction

█ In response to the Court's inquiry about subject matter jurisdiction following Thomason's filing of the Second Amended Complaint, Thomason contends that "jurisdiction is lacking." *See* Thomason's Brief 2 (dated June 11, 1998). This is interesting in light of the fact that, following removal, the Second Amended Complaint was filed in this Court by no one other than Thomason himself. I need not deal with this apparent contradiction—the filing of a complaint in federal court with apparently full knowledge that the Court would not be able to exercise subject matter jurisdiction—because Thomason's conclusion that the Court may not exercise subject matter jurisdiction over this action is incorrect.

The only possible way in which the Court could exercise subject matter jurisdiction over this action following removal is under 28 U.S.C. § 1331 and/or § 1343, which are the jurisdictional complements of a civil rights action under 42 U.S.C. § 1983. *See Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 574, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976) (noting complement between section 1983 and section currently codified in section 1343(a)(3)); *Hilfirty*

*v. Shipman*, 91 F.3d 573, 577 (3d Cir.1996) (noting jurisdictional complements of 42 U.S.C. § 1983).

Whether jurisdiction was properly invoked upon removal requires an analysis of the section 1983 claim in Thomason's Amended Complaint, the pleading upon which removal was based. The Second Amended Complaint is, as a practical matter, identical, except that Thomason omitted any reference to 42 U.S.C. § 1983. Regardless of whether the magical phrase "42 U.S.C. § 1983" appears in Count I of the Second Amended Complaint, Thomason unambiguously alleges all of the elements of a claim under 42 U.S.C. § 1983 in both pleadings. He alleges in the Second Amended Complaint that Lehrer deprived him of "rights, privileges, or immunities secured the Constitution and laws," and that Lehrer committed an abuse of process "under color of statute and state laws." *See* Second Amended Compl. at ¶¶ 5–6; *see Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), and noting elements of section 1983 claim). These facts, as alleged on the face of the Second Amended Complaint and taken as true, are minimally sufficient to invoke the Court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a). *See FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 839–40 (3d Cir.1996) (where district court dismissed section 1983 claim for lack of subject matter jurisdiction, court reviewed complaint to determine "whether [it] alleges facts on its face which, if taken as true, would be sufficient to invoke the district court's jurisdiction"); *Jemzura v. Public Serv. Comm'n*, 971 F.Supp. 702, 706 (N.D.N.Y.1997) (holding that court may not hear action unless "federal question is presented on the face of plaintiff's properly pleaded complaint").

As I discuss below, Thomason's section 1983 claim, specifically, the allegation that Lehrer acted under color of state or federal law by representing Absolute and Knight in asserting counterclaims against Thomason, is sanctionable under, *inter alia*, Rule 11(b)(2) because it is not warranted by existing law or nonfrivolous arguments for an extension or

expansion of existing law. *See* Part II.B.1. Thomason's section 1983 claim is not, however, "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or other otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Environment,* —— U.S. ——, ——, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998) (quoting *Oneida Indian Nation of New York State v. County of Oneida, New York,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)); *see also Duke Power Co. v. Carolina Environmental Study Grp., Inc.,* 438 U.S. 59, 70, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (holding that "the test is whether the cause of action alleged is so patently without merit so as to justify the court's dismissal for want of jurisdiction"); *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1248 & n. 1 (6th Cir.1996) (in determining whether complaint states substantial federal claim so as to invoke subject matter jurisdiction, court equated " 'substantial' with nonfrivolous because other definitions of substantial are circular"), *amended and reh'g en banc denied by* 1998 WL 117980 (6th Cir. Jan.15, 1998).

It may often be the case that "the distinction between a claim that is wholly frivolous for jurisdictional purposes and a claim that is doomed on the merits [is] medieval in its fineness, and ... of little practical importance." *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 144 (7th Cir.1996). In this case, however, there are meaningful consequences to the interface between Rules 12(b)(1) and 12(b)(6). If there were no subject matter jurisdiction over Count I of the Second Amended Complaint, then removal to this Court of the action as pled in the Amended Complaint would have been improper because the case could not have originally been brought in this Court. *See Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 457–58 (5th Cir.1998) (noting that after removal court must ask whether "it would have

had jurisdiction of the case had it been filed in that court"); *Korea Exchange Bank v. Trackwise Sales Corp.,* 66 F.3d 46, 51 (3d Cir.1995) (holding that "an irregularity in removal of a case to federal court is to be considered 'jurisdictional' only if the case could not have initially been filed in federal court"). This is because Count I of the Amended Complaint, upon which removal was predicated, is, as a practical matter, identical to Count I of the Second Amended Complaint. If there were no subject matter jurisdiction upon removal, remand to state court would be the only appropriate alternative under 28 U.S.C. § 1447(c). *See, e.g., Hudson United Bank v. LiTenda Mortgage Corp.,* 142 F.3d 151, 157 (3d Cir.1998) (discussing distinction between section 1367(c) remand and section 1447(c) remand and holding that discretionary "remands authorized by [section] 1367(c) may be entered only when federal subject matter jurisdiction has been affirmatively established"). Because, as I explain below, I may exercise jurisdiction over the action as pled in the Second Amended Complaint and since the action could have originally been brought in federal court, I am able to dismiss Count I, *see* Part II.B.1, *infra,* and will exercise supplemental jurisdiction over the remaining claims, as permitted under section 1367, *see* Part II.D, *infra.*[1]

Exercising subject matter jurisdiction over this action and dismissing the section 1983 claim for failure to state a claim, rather than dismissing the entire action for lack of subject matter jurisdiction, is warranted for two reasons. First, dismissal of a claim for lack of subject matter jurisdiction under Rule 12(b)(1), rather than for failure to state a claim under Rule 12(b)(6), is reserved for the truly extreme case. While the baselessness of Thomason's legal theory is clear enough that it is easily dismissed and is indeed sanctionably frivolous, it cannot be said that it

---

1. Even if there were no subject matter jurisdiction over this case, the Court could nonetheless impose sanctions under Rule 11, because Thomason filed the Second Amended Complaint in this Court *after* removal. *See, e.g., Willy v. Coastal Corp.* 503 U.S. 131, 138, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992); *Matos v. Richard A. Nellis, Inc.,* 101 F.3d 1193 (7th Cir.1996) (Easterbrook,

J.); *Branson v. Nott,* 62 F.3d 287, 293 (9th Cir.), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 565, 133 L.Ed.2d 491 (1995); *Bolivar v. Pocklington,* 975 F.2d 28, 31 (1st Cir.1992); 2 James Wm Moore, *et al., Moore's Federal Practice* §§ 11.02[2][c], 11.23[4]; Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 25.A.1 (2d ed. 1994 & Supp.1997).

falls within the narrow sliver of cases carved out by *Oneida.* More importantly, the Third Circuit's approach to the admittedly hazy boundary between Rules 12(b)(1) and 12(b)(6) focuses on the right claimed by the plaintiff, rather than the probable falsity of the legal theory upon which the claim of right is predicated. *See, e.g., Growth Horizons, Inc. v. Delaware Cty.,* 983 F.2d 1277, 1280–81 (3d Cir.1993); *Kulick v. Pocono Downs Racing Ass'n, Inc.,* 816 F.2d 895, 898–99 (3d Cir. 1987) (Becker, J.). This more cautious approach ensures that courts do not make preliminary forays into the merits of a case under the guise of ruling on a jurisdictional issue. Accordingly, I find that the Court may exercise subject matter jurisdiction over Count I of the Second Amended Complaint, and supplemental jurisdiction over Counts II through IV.[2]

### B. Count I of the Second Amended Complaint

In addition to the Court's ordering Thomason to show cause why Count I should not be dismissed for lack of subject matter jurisdiction, the Court also ordered Thomason to show cause why Count I of Amended Complaint should not be dismissed for failure to state a claim upon which relief can be granted. Because Count I of the Amended Complaint is, as a practical matter, identical to Count I of the Second Amended Complaint, which was filed after the Court entered its Order to Show Cause, I will consider the Second Amended Complaint. For the reasons set forth below, I conclude that Count I of the Second Amended Complaint does not even begin to approach stating a claim upon which relief can be granted.

Taking the facts as alleged in the Second Amended Complaint as true, Thomason can prove no set of facts consistent with the Second Amended Complaint which would entitle him to relief on Count I of the Second Amended Complaint. *See Gomez v. Toledo,* 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

An attorney representing a private litigant who alleges a cause of action against another private party in federal or state court does not act under color of law, either state law for the purposes of an action under section 1983, or federal law for the purposes of an action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the law of which closely tracks that of section 1983, *see, e.g., Johnstone v. United States,* 980 F.Supp. 148, 152 (E.D.Pa.1997). Such behavior cannot be "fairly attributable" to any governmental authority. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 930, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). "Private misuse of a statute or procedure ... does not describe conduct which is actionable under section 1983 ... despite the participation of state officers in effecting statutory processes." *Winterland Concessions Co. v. Trela,* 735 F.2d 257, 262 (7th Cir.1984); *see, e.g., Fries v. Helsper,* 146 F.3d 452, 457–58 (7th Cir.1998) (discussing one way in which private party may act under color of law for purposes of section 1983), *petition for cert. filed,* 67 U.S.L.W. 3106 (Aug. 3, 1998); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1266 (3d Cir.1994) ("a state procedure permitting private parties to file a complaint and confess judgment essentially involves *acquiescence* by the state, not *compulsion*") (emphasis added); *Collins v. Womancare,* 878 F.2d 1145, 1152–54 (9th Cir. 1989), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); *Schucker v.*

---

**2.** In response to Thomason's brief, Lehrer objects to Thomason's allegedly improper amendment of the Amended Complaint. Lehrer claims that Thomason could not have amended the Amended Complaint under Rule 15(a) because he had already amended the Complaint once in state court. This is silly. When the action was removed, it was removed on the basis of the Amended Complaint filed in state court, not the Complaint. If, as Lehrer asserts, the action was to be treated as if originally filed in this Court, then it would be treated as if the Amended Complaint had been filed in this Court. Accordingly, the amendment in state court does not deprive Thomason of the one "free" pre-answer amendment available in federal court under Rule 15.

*Rockwood,* 846 F.2d 1202, 1204 (9th Cir.1988) (holding that mere invocation of "state legal procedures does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement" and citing *Lugar,* 457 U.S. at 939 n. 21, 102 S.Ct. 2744), *cert. denied,* 488 U.S. 995, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988); *Roudybush v. Zabel,* 813 F.2d 173, 177 (8th Cir.1987); *Loyd v. Loyd,* 731 F.2d 393, 397–99 (7th Cir.1984) (actions taken by representative of estate appointed pursuant to governmental procedures are not state action); *Barnard v. Young,* 720 F.2d 1188, 1189 (10th Cir.1983) (holding that use by private attorney of subpoena duces tecum is not state action under section 1983); *Bochetto v. LaBrum & Doak, L.L.P.,* 1997 WL 560191, *2–6 (E.D.Pa. Aug. 28, 1997) (discussing, *inter alia, Lugar* and *Jordan* ); *Nelson v. Butler,* 929 F.Supp. 1252, 1259 n. 8 (D.Minn.1996) (husband's suit against ex-wife's attorneys would not allege claim under section 1983), *aff'd mem.,* 108 F.3d 1382, 1997 WL 136685 (8th Cir.1997); *Angelico v. Lehigh Valley Hosp., Inc.,* 1996 WL 524112, *2 (E.D.Pa. Sept. 13, 1996) (holding that "subpoenas obtained and served by private parties involve only the use of an available state procedure, and do not involve either state officials or significant assistance from state officials to accomplish the desired result"); *Williams v. Dark,* 844 F.Supp. 210, 213 (E.D.Pa.1993) (private attorney acting on behalf of client is not state actor for purposes of section 1983), *aff'd mem.,* 19 F.3d 645 (3d Cir.1994); *see also Shipley v. First Fed. Savings & Loan Ass'n of Delaware,* 703 F.Supp. 1122, 1128–31 (D.Del.1988), *aff'd,* 877 F.2d 57, 1989 WL 61311 (3d Cir.1989), *cert. denied,* 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 666 (1990). I need not go on. Count I of the Second Amended Complaint will be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### C. Sanctions

As I indicated in the Order to Show Cause, a federal court may impose sanctions against an attorney by resorting to three possible sources of authority, either by exercising its powers under Rule 11 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1927, or by exercising its inherent powers. *See, e.g., In re Tutu Wells,* 120 F.3d at 376, 383; *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.,* 57 F.3d 1215, 1223–24 (3d Cir.1995). Having concluded that a sanction is warranted under Rule 11 and having determined what sanction is sufficient in order to "deter repetition of such conduct," Fed. R.Civ.P. 11(c)(2), I need not consider whether a sanction is warranted under 28 U.S.C. § 1927, or the Court's inherent powers.

### 1. Sanctions under Rule 11

Because Thomason clearly presented a pleading to this Court within the meaning of Rule 11(b)—following removal, he filed the Second Amended Complaint in this Court—he may be sanctioned under Rule 11. *See generally Buster v. Greisen,* 104 F.3d 1186, 1190 n. 4 (9th Cir.1997) (discussing *Bisciglia v. Kenosha Unified School Dist. No. 1,* 45 F.3d 223 (7th Cir.1995), and when a sanction under Rule 11 may be imposed in action removed from state court), *cert. denied,* —— U.S. ——, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997).

A sanction is clearly warranted in this case under Rule 11(b)(1). Rule 11(b)(1) precludes the filing of, among other things, pleadings that are presented "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11(b)(1). The state court litigation which was removed to this Court and ultimately repled by Thomason in the Second Amended Complaint was initiated after Absolute and Knight named Thomason as a Defendant in the *Waterloov* litigation. Thomason and the other attorneys who were named as Defendants in the Waterloov litigation had ample opportunity to challenge in this Court the factual allegations contained in Absolute and Knight's counterclaims. One obvious mechanism by which this could have been done was to litigate these claims on their merits. For example, Thomason could immediately have answered Absolute and Knight's counterclaims and moved for judgment on the pleadings, or Thomason could also have immedi-

ately moved to dismiss Absolute and Knight's counterclaims on the ground that his actions on behalf of his client could not rise to the level of unfair competition, as alleged in Count IV of Absolute's Amended Counterclaims.

Second, if the counterclaims were as frivolous and lacking in a factual basis as Thomason's Second Amended Complaint alleges they are, Thomason easily could himself have moved for sanctions under Rule 11. Instead, Thomason, angered perhaps by the fact that he and his law firm would have to withdraw or risk disqualification as counsel for Waterloov, chose to initiate a second separate action in state court and ultimately, after removal, to continue litigating that action in this Court.

Thomason's resort to a second separate action in state court against Lehrer and his professional corporation represents nothing more than a diversionary litigation tactic designed to draw Lehrer into the underlying patent litigation, just as Lehrer had drawn Thomason into the litigation. As I have already observed, if Thomason wanted to challenge the allegedly frivolous allegations in Absolute and Knight's counterclaims, he could have moved for sanctions under Rule 11, or litigated those claims on the merits. There was clearly no purpose to Thomason's institution in state court, and continuation in this Court, of a separate civil rights action against Lehrer, other than to harass Lehrer, and perhaps to attempt to do to Lehrer what Lehrer had done to him, prevent him from appearing in the *Waterloov* litigation.

Thomason's Second Amended Complaint, in addition to the allegedly false allegations complained of in the original Complaint, also contended that Absolute and Knight improperly realleged counterclaims in the *Waterloov* action which the Court dismissed on March 31, 1998, and which were in part directed against Thomason. Indeed, the Court was

itself perplexed by this pleading. Nonetheless, once again, Thomason had other remedies available to him to challenge the propriety of the repleading of claims by Absolute and Knight which had been dismissed by the Court. Not only could Thomason have litigated those allegations on the merits, *pro se* or through retained counsel, he also could have moved for Rule 11 sanctions against Absolute and Knight, and/or Lehrer himself. Furthermore, Thomason could have argued, on the basis of the Court's March 31, 1998, dismissal of Counts VII through IX of Absolute and Knight's counterclaims, that the Court could not exercise supplemental jurisdiction over those counterclaims because they did not form part of the same case or controversy as the claims over which the Court had original jurisdiction. Thomason could have exercised these options acting either *pro se* or through separate counsel.

Instead, Thomason amended his Complaint in state court, and, after removal by Lehrer, refiled that pleading in this Court as the Second Amended Complaint, accusing Lehrer of, *inter alia*, an abuse of process and a civil rights violation. Clearly, the only purpose to including these allegations as part of the separate action was to harass Lehrer.[3] Accordingly, a sanction under Rule 11(b)(1) is warranted.

Although a simple finding under Rule 11(b)(1) would be enough to impose an effective sanction on Thomason, sanctions are also warranted under Rule 11(b)(2). Rule 11(b)(2) precludes the filing of, among other things, pleadings in which claims are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). As I have already held, Thomason's allegations that Lehrer acted under color of state or federal law in representing Absolute and Knight when Absolute and Knight named

---

**3.** If what truly angered Thomason was the fact that Absolute and Knight's counterclaims against him could jeopardize Thomason's representation of Waterloov, his anger is misplaced. Even if Absolute and Knight's counterclaims only named Moser as Defendant to their counterclaims, New Jersey's Rules of Professional Conduct, particularly the rule regarding imputed disqualification,

N.J. R. Prof. Cond. 1.10(a), may have still prevented Thomason from representing Waterloov. Moser has admitted at least conditionally that he, Knight, and Kuhns are all shareholders in Waterloov International Corporation. *See* Thomason, Moser, Wall, and Thomason & Moser's Answer at p. 2–3.

Thomason as a Defendant to their counter-claims, are wholly without merit. Even a casual investigation, let alone the reasonable inquiry required by Rule 11, *see* Fed.R.Civ.P. 11(b), would have revealed to Thomason that much more participation by the state and invocation of state powers and procedures is required to transform the attorney repre-senting the client who merely alleges those claims into a state actor for the purposes of section 1983. Count I of the Second Amend-ed Counterclaim was not "warranted by ex-isting law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2).

Even if not merely a *post hoc* rationaliza-tion of his behavior, none of the cases cited by Thomason in response to the Order to Show Cause suggests otherwise. Those cases address conduct which involves state actors far more intimately than mere service of process, or conduct by actual state offi-cials, or merely address the question of when state action may constitute abuse of process. None supports the theory that an attorney acting on behalf of a private litigant in filing and serving a counterclaim against another private party in a private lawsuit pending in state or federal court may become a state actor merely by exercising the right to sue. None of the cases cited by Thomason sup-ports a good faith argument that Lehrer's representation of Absolute and Knight in as-serting counterclaims against Thomason ef-fected a deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible" and that Lehrer "acted together with or . . . obtained significant aid from state officials." *Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. *See, e.g., Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (holding that prison guards who were employed by private prison management firm were subject to liability under section 1983, but were not entitled to qualified immunity); *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (noting decisions establishing that private use of state laws to secure property, by garnishment, prejudgment attachment, or re-plevin, could constitute state action, and dis-cussing *Lugar*'s two-part test for state ac-tion); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698 (6th Cir.1996) (attorneys who conducted search and executed *ex parte* court order together with United States marshals could be federal actors in *Bivens* action); *McArdle v. Tronet-ti*, 961 F.2d 1083 (3d Cir.1992) (discussing whether prison officials were entitled to ab-solute immunity), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Rose v. Bartle*, 871 F.2d 331 (3d Cir.1989) (discussing immunity of prosecutors); *Jen-nings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977) (holding that defendant clearly act-ed under color of law because "his official position as special prosecutor enabled him to undertake the investigation and prosecution of the plaintiff and thereby abuse process for purposes of extortion" and that those who act in concert with state officials may be liable under section 1983). Thomason could not reasonably or in good faith have thought that every factually baseless lawsuit necessarily gives rise to a section 1983 action. Accord-ingly, I find that a sanction is also warranted under Rule 11(b)(2).

■ The appropriate sanction is one which "is sufficient to deter repetition of such con-duct or comparable conduct by other similar-ly situated." Fed.R.Civ.P. 11(c)(2). "The sanctions may consist of, or include, di-rectives of a nonmonetary nature, or an or-der to pay a penalty into court, or, if imposed on motion and warranted for effective deter-rence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* Among the nonmonetary sanctions contem-plated by the rule is compelling the offending attorneys to attend seminars or other edu-cational programs. *See, e.g., Gaiardo v. Eth-yl Corp.*, 835 F.2d 479, 482 (3d Cir.1987); Fed.R.Civ.P. 11 advisory committee's note to 1993 Amendments.

I find that an appropriate sanction in this case should include both a monetary and nonmonetary aspect. The nonmonetary ele-

ment of the sanction which is warranted in this case is to compel Thomason to attend and complete two continuing legal education seminars within the next eighteen months.[4] One seminar must deal with federal practice and procedure. The other seminar must deal with attorney professionalism and professional conduct, which may include a course in professional responsibility or the Rules of Professional Conduct. The monetary sanction imposed upon Thomason will be a fine of $2,000, payable half to Lehrer and half to the Clerk of the Court within thirty days of the date of this Opinion. These two forms of sanction in combination should reacquaint Thomason with the notion that an attorney can be both an aggressive *and* principled advocate for a client without allowing his temper to override his professional obligations, especially to the Court. There is nothing inconsistent in behaving in a professional manner, while zealously representing a client's interests. *See, e.g.,* ABA Journal, *What it Takes to be a Professional* 48–73 (Aug.1998); American Bar Association, *Promoting Professionalism* (1997).

### 2. Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Powers

■ 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Before a court can order the imposition of attorneys' fees under § 1927, it must find wilful bad faith on the part of the offending attorney." *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1191 (3d Cir.1989). Sanctions under section 1927 should only be imposed "in instances of a serious and studied disregard for the orderly process of justice." *Id.* Because I have already imposed a substantial sanction against Thomason, a sanction which the

Court believes is sufficient to deter Thomason's future violation of Rule 11, I need not make any finding with respect to section 1927, including whether Thomason should be required to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of [his] conduct." 28 U.S.C. § 1927.

For the same reasons, I need not make any finding as to whether the Court should exercise its inherent powers to sanction attorney misconduct, specifically the power to punish willful abuse of the litigation process or other bad faith litigation tactics. Where I have already imposed a sufficient and appropriate sanction under Rule 11, I need not resort to the Court's inherent powers. *See, e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (noting that Court's inherent powers "must be exercised with restraint and discretion" and that "primary aspect of [court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process").

### D. Counts II through IV of the Second Amended Complaint

Because the circumstances set forth in Counts II through IV of the Second Amended Complaint arise out of the conduct of counsel in a case already pending in this Court, I will exercise supplemental jurisdiction over Counts II through IV of the Second Amended Complaint pursuant to 28 U.S.C. § 1367(a). I will also order Thomason to show cause why Counts II through IV of the Second Amended Complaint should not be dismissed pursuant to the litigation privilege which is firmly established under New Jersey law. *See Peterson v. Ballard,* 292 N.J.Super. 575, 581, 679 A.2d 657 (App.Div. 1996), *certif. denied,* 147 N.J. 260, 686 A.2d 761 (1996).

■ This privilege affords to attorneys, parties, and their representatives absolute immunity for statements made in the course of judicial or quasi-judicial proceedings. *See id.* (discussing *Erickson v. Marsh & McLen-*

---

4. These seminars must be sponsored or offered by a law school accredited by the American Bar Association or a reputable provider of continuing legal education.

*nan Co., Inc.,* 117 N.J. 539, 569 A.2d 793 (1990), and *Hawkins v. Harris,* 141 N.J. 207, 661 A.2d 284 (1995)). Counts II through IV of the Second Amended Complaint, based on state law, appear to assert nothing more than claims for relief predicated on statements made by Lehrer during the course of the Waterloov litigation. *See* Second Amended Compl. at ¶¶ 21, 24–25, 27, 34, 37, 40, 45, 47.

### III. Conclusion

For the reasons set forth above, I will dismiss Count I of the Second Amended Complaint for failure to state a claim upon which relief can be granted. I will also sanction Thomason pursuant to Rule 11 and impose upon him a fine of $2,000, $1,000 of which is to be paid directly to Lehrer and $1,000 to be deposited into the Court's Registry pursuant to Local Civil Rule 67.1, both of which shall be paid within thirty days of the date of this Opinion. Additionally, I will require Thomason to attend both a course on federal practice and procedure and a course on attorney professionalism and professional conduct within eighteen months of the date of this Opinion. Thomason shall file an affidavit with the Court attesting to his attendance at and satisfactory completion of the required courses. Finally, I will order Thomason to show cause why Counts II through IV of the Second Amended Complaint should not be dismissed pursuant to the litigation privilege, as recognized under New Jersey law. The Court will enter an appropriate Order.

### ORDER

This matter having come before the Court on the Order to Show Cause Why Count I of the Amended Complaint Should Not Be Dismissed for Failure to State a Claim, Why Counts II Through IV Should Not Be Dismissed Pursuant to 28 U.S.C. § 1367(c)(3), and Why Sanctions Should Not Be Imposed Against Charles L. Thomason, Esq. Pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and the Court's Inherent Powers, entered on May 26, 1998, as amended on May 28, 1998, to provide that Plaintiff shall show cause as to why Count I of the Second Amended Complaint should not be dismissed for lack of subject matter jurisdiction, Plaintiff, Charles L. Thomason, Esq., appearing *pro se,* and Norman E. Lehrer, Esq. of Norman E. Lehrer, P.C. appearing on behalf of Defendants, Norman E. Lehrer, P.C. and Norman E. Lehrer, Esq.; and

The Court having considered the submissions of the parties; and

For the reasons set forth in an OPINION filed concurrently with this ORDER,

IT IS ORDERED on this 21st day of August, 1998, that Count I of the Second Amended Complaint be, and hereby is, DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

IT IS FURTHER ORDERED, pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure, that within 30 days of the date of this ORDER Plaintiff shall, pursuant to Local Civil Rule 67.1, deposit $1,000 into the Court's Registry; and

IT IS FURTHER ORDERED, pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure, that within 30 days of the date of this ORDER Plaintiff shall pay $1,000 directly to Defendants; and

IT IS FURTHER ORDERED, pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure, that within eighteen months of the date of this ORDER, Plaintiff shall attend and satisfactory complete two seminars sponsored or offered by a law school accredited by the American Bar Association or a reputable provider of continuing legal education, one on federal practice and procedure and the other on attorney professionalism and professional conduct, and shall so attest by affidavit filed with the Court; and

IT IS FURTHER ORDERED that Plaintiff shall show cause on October 16, 1998, at 9:30 a.m., why Counts II through IV of the Second Amended Complaint should not be dismissed pursuant to the litigation privilege as recognized under New Jersey law; and

IT IS FURTHER ORDERED that Plaintiff's brief with respect to the litigation privilege shall be filed on or before September 25, 1998, that Defendants' responsive brief, if any, shall be filed on or before October 2,

1998, and that Plaintiff's reply brief, if any, shall be filed on or before October 9, 1998; and

IT IS FURTHER ORDERED that all papers filed shall comply with the Local Civil Rules for the District of New Jersey, including, but not limited to Local Civil Rule 7.2(b); and

IT IS FURTHER ORDERED that, pursuant to Rule 78 of the Federal Rules of Civil Procedure, unless otherwise directed by the Court, the Order to Show Cause shall be decided on the papers without oral argument.